JUSTICE BOATRIGHT
delivered the Opinion of the Court.
1 In this interlocutory appeal of the trial court's order suppressing evidence obtained as a result of a vehicle search, we consider whether the odor of marijuana can contribute to a finding of probable cause even though, since 2012, possession of one ounce or less of marijuana is allowed under Colorado law. We hold that the odor of marijuana is relevant to the totality of the cirenmstances test and can contribute to a probable cause determination. Therefore, the trial court erred when it disregarded the odor of marijuana in its probable cause analysis, Under the facts of this case, we conclude that there was probable cause to search the vehicle for illegal drugs in light of the two occupants' divergent stories about their time in Colorado, their "extreme" nervousness, the strong odor of raw marijuana, and a K-9 unit's alert at the rear of the vehicle, We therefore reverse the trial court's order suppressing evidence obtained from the search and remand for proceedings consistent with this opinion.
I. Facts and Procedural History
12 A Colorado State Trooper on patrol along Interstate 76 in Weld County stopped a Jeep Cherokee with Towa license plates that was heading eastbound.[1] The Trooper approached the vehicle's open, passenger side window and quickly noted a "heavy odor" of "raw" (e., unburnt) marijuana. The Trooper testified that "the nervousness [of the two men] was to an extreme that [] wasn't normal" when compared to other stops that the Trooper had conducted during his nineteen-year career. For example, the Trooper noted that the driver had beads of sweat on his face, stuttered in response to requests, and had shaky hands. The Trooper also stated that Defendant-Appellee Victor Zuniga, who was the passenger in the car, appeared nervous and was "overly nice" as he assisted the driver in retrieving requested documents from the glovebox. The documentation showed that the vehicle was not regis *1055 tered in the driver's name. As a result, the Trooper requested that the driver exit and step behind the vehicle.
'I 3 During the ensuing interview, the driver explained that the vehicle was 'his even though it was registered in his mother's name. As the conversation progressed, the Trooper again noted that the driver was "overly nervous" and would not look the Trooper in the eye, opting instead to look at the surroundings of the traffic stop. The Trooper asked the driver why the two were in Colorado, to which the driver responded that they drove out approximately four days earlier but "didn't go anywhere and didn't do anything" once there. The Trooper testified that he found this suspicious because people normally have "some kind of reason, whether it's business or pleasure," for visiting another city or state. The driver also indicated that they stayed at-a hotel in the Denver area, but he could not recall the name of the hotel.
T4 The Trooper then moved to Zuniga, who was still sitting in the passenger side of the vehicle, and asked him why the two had visited Colorado. Zuniga responded that they drove out approximately two days earlier to visit his grandmother, who was in the hospital due to kidney problems. Zuniga also told the Trooper that he and the driver spent the rest of their time visiting the mountains and walking along the Sixteenth Street Mall in Denver, Zuniga said that they stayed at his grandmother's home after she was released from the hospital, but he could not remember specifically where his grandmother lived in the Denver area. The Trooper testified that during this brief conversation, Zuniga took several moments before responding to each question.
¶ 5 Based upon the men's inconsistent stories, their extreme nervousness, and the strong odor of raw marijuana, the Trooper was suspicious that criminal activity was ongoing in the vehicle, Accordingly, the Trooper told the two men that he was going to have his K-9 unit, Lobo, conduct a "free air sniff" around the vehicle. Lobo is trained to detect four different narcotic odors-marijuana, cocaine, methamphetamine, and heroin-but his alert to the presence of a narcotic is "general," meaning he is unable to indicate to his handler which particular nar-eotic he detects. In addition, Lobo is unable to differentiate between different weights or amounts of narcoties, and thus he alerts any time he detects a scent of any of the four nareoties, regardless of the amount.
T6 Lobo quickly alerted at the rear hatch of the Jeep Cherokee. As a result, the Trooper lifted the rear hatch door and found a large duffel bag, which the driver identified as Zuniga's. The Trooper opened the duffel bag and found approximately one pound of marijuana wrapped in plastic inside, The Trooper then turned his attention to an ice cooler next to the duffel bag, Upon opening the cooler, the Trooper immediately smelled a strong odor of raw marijuana and subsequently found 12.6 ounces of marijuana concentrate[2] under the ice in the cooler.
17 The Trooper called Zuniga over and asked him if the martjuana in the duffel bag and the marijuana concentrate in the cooler were his, to which Zuniga responded, "Yes, gir." The Trooper arrested Zuniga, and the People charged him -with two counts of possession with intent to manufacture or distribute marijuana or marijuana concentrate, both level <- three drug felonies. § 18-18-406(2)(b)(I), (IIT)(C), C.R.8. (2015).
18 After he pleaded not guilty, Zuniga filed a motion to suppress, arguing that the seized marijuana was the fruit of an illegal detention and search. In particular, Zuniga argued that (1) the Trooper lacked reasonable suspicion to stop the vehicle in the first place, (2) the prolonged detention of Zuniga was unlawful, and (8) the vehicle search was not supported by probable cause. After hearing the Trooper's testimony and argument from both parties, the trial court rejected Zuniga's first two arguments but agreed with him that the Trooper lacked probable cause to search the vehicle. The trial court therefore granted Zuniga's motion to suppress.
*1056 «9 On the probable cause issue, the trial court first noted the predicament that, because marijuana possession is legal in certain civreumstances in Colorado and drug-sniffing dogs are unable to differentiate between legal and illegal amounts of marijuana, "right now, you've got dogs that are alerting on ... legal substances." Given this fact, the trial court concluded that there was no probable cause to search the vehicle because the Trooper could only speculate about the amount of marijuana he smelled and about the type and amount of narcotic that caused the dog's alert, In the trial court's view, because marijuana possession is legal in certain quantities, the odor of marijuana and the dog's alert could not contribute to a determination that probable cause existed to search. for contraband or evidence of a crime.
{10 This interlocutory appeal followed. See § 16-12-102(2), C.R.S. (2015); C.A.R, 4.1,
II. Interlocutory Jurisdiction
¢11 Under section 16-12-102(2) and C.AR,. 4.1, the People may file an interlocutory appeal to challenge certain types of adverse suppression rulings, including the suppression of evidence obtained from a search that the trial court deemed unlawful. People v. Smith, 254 P.3d 1158, 1160 (Colo. 2011). Here, the trial court's suppression of physical evidence that the Trooper obtained as a result of the vehicle search falls under the purview of the interlocutory appeal statute 'and rule.[3]
III. Analysis
{12 To determine whether the trial court erred by suppressing the evidence, we first discuss the constitutional protection against unreasonable searches and the corresponding warrant requirement. Next, we describe the automobile exception to the warrant requirement, which permits the warrantless search of an automobile if there is probable cause to believe that the automobile contains evidence of a crime, We then outline the totality of the cireumstances test used in probable cause analyses, With that test in mind, we then address the trial court's conclusion that the odor of marijuana cannot contribute to probable cause now that possession of one ounce or less of marijuana is allowed under Colorado law. We hold that the odor of marijuana is relevant to, the totality of the cireamstances test and can contribute to a probable cause determination. Given that rule, we conclude that, under the totality of the cireumstances here, probable cause existed to search the vehicle, meaning the trial court's suppression order was erroneous. ' L
A. Standard of Review
{18 A probable cause determination, is a mixed question of law «and fact. People v. Coates, 266 P.3d 397, 400 (Colo. 2011). "When reviewing a trial court's suppression order, we give deference to the trial court's findings of fact but review its application of law de novo." People v. Vaughn, 2014 CO 71, ¶ 9, 334 P.3d 226, 229; see also Grassi v. People, 2014 CO 12, ¶ 11, 320 P.3d 332, 335.
B. The Fourth Amendment and Probable Cause
114 People 'have a const1tut10na1 ~ right to be free from unreasonable searches and seizures. U.S. Const. amend. IV; Colo. Const. art, II, §,7. A warrantless search is presumptwely unreasonable and therefore unconstitutional "unless it is supported by probable cause and is justified under one of the narrowly defined exceptions to the warrant requirement.". Mendez v.. People, 986 P.2d 275, 279 (Colo. 1999). One of those exceptions is the automobile exception, which "allows police officers to conduct a warrant-less search of an automobile if they have probable cause to believe that the automobile contains evidence of a erime." People v. Hill, 929 P.2d 785, 739 (Colo. 1996); see also California v. Acevedo, 500 U.S. 565, 580, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991) ("The police may search an automobile and the *1057 containers within it where they have probable cause to believe contraband or evidence is contained."). If a warrantless search violates the Fourth Amendment-either because there was no probable cause or because the search did not fall within one of the recognized exceptions to the warrant requirement-then the remedy is suppression of the evidence obtained. People v. Gutierrez, 222 P.3d 925, 941 (Colo. 2009); Mendez, 986 P.2d at 279.
"15 Here, it is undisputed that the Trooper did not have a warrant to conduct a search of the automobile. Therefore, we must determine whether the Trooper had probable cause to believe that the vehicle contained evidence of a crime to jﬁs’qify his search under the automobile exception.
$16 "A police officer has probable ecause to conduct a search when 'the facts available to [the officer] would warrant a [person] of reasonable caution in the belief that contraband or evidence of a crime is present." Florida v. Harris, — U.S. —, 133 S.Ct. 1050, 1055, 185 L.Ed.2d 61 (2013) (second alteration in original) (quoting Texas v. Brown, 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1988) (plurality opinion)). As the United States Supreme Court has stressed, "the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" Riley v. California, — U.S, —, 134 S.Ct. 2473, 2482, 189 L.Ed.2d 430 (2014) (quoting Brigham City v. Stuart, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006)). For that reason, probable cause is a commonsense concept that requires judges to consider the totality of the cireumstances to determine "whether a fair probability exists that a search of a particular place will reveal contraband or evidence of a crime." Mendez, 986 P.2d at 280. It is not a standard that "lend[s] itself to mathematical certainties" and instead is based on "factual and practical considerations of everyday life on which reasonable and prudent people, not legal technicians, act." Id.; see also Illinois v. Gates, 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) ("[P Jrobable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules."). In sum, the totality of the cireum-stances test for probable cause is an "all-things-considered approach" that calls for consideration of any and all facts that a reasonable person would consider relevant to a police officer's belief that contraband or evidence of a crime is present. See Harris, 183 S.Ct. at 1055-56.
'A 17 With these principles in mind, we now turn to the role that the odor of marijuana can play in the totality of the civrenmstances test in light of the fact that possession of one ounce or less of marijuana is now allowed under Colorgdo law. **
C. Probable Cause and Amendment 64
1 18 Since passage of "Amendment 64" to the Colorado Constitution in 2012, martjuana use, possession, and growth are lawful under Colorado law in certain cireumstances. Colo. Const. art. XVIII, § 16, cl, 8. As pertinent here, Amendment 64 states that it is "not unlawful and shall not be an offense under Colorado law" for a person over twenty-one years of age to possess one ounce or less of marijuana. Id, But consistent with this constitutional provision, section 18-18-406(4)-(5) makes it a crime for a person to knowingly possess more than one ounce of marijuana or marijuana concentrate. See also §. 18-18-4338 ("The provisions of this part 4 do not apply to a person twenty-one years of age or older acting in conformance with section 16 of article XVIII of the. state constitution ...."). The statute also makes it a crime for those other than licensed marijuana facilities to knowingly possess marijuana or marijuana concentrate with the intent to sell or distribute it, and it classifies each offense under this provision based upon the amount of marijuana involved. § 18-18-406(2)(b)(I), (III). Thus, 'Colorado law makes certain marijuana-related activities lawful and others unlawful.
119 The trial court here found that because possession of one ounce or less of marijuana is allowed under Colorado law, the odor of marijuana cannot contribute to a determination of probable cause. As the trial court observed, "The dog cannot alert based on quantity. And so, he is alerting on illegal substances. and legal substances." The trial court consequently concluded that the odor *1058 of marijuana could just as likely have been indicative of legal activity as of illegal activity and therefore could not have added to the Trooper's suspicions. See Commonwealth v. Overmyer, 469 Mass. 16, 11 N.E.3d 1054, 1058-59 (2014) (holding that the odor of unburnt marijuana cannot contribute to probable cause unless the officers are able to discern from the odor that a eriminal amount of marijuana is present). As a result, the trial court disregarded the Trooper's detection of a marijuana odor, as well as Lobo's alert, and found that there was no probable cause to search the vehicle under the remaining facts.
120 We disagree with this reasoning. As the United States Supreme Court has stated, the totality of the circumstances test for probable cause is an "all-things-considered approach," Harris, 188 S.Ct., at 1055, and its "ultimate touchstone" is reasonableness, Riley, 184 S.Ct. at 2482 (quoting Stuart, 547 U.S. at 403, 126 S.Ct. 1948), A possible innocent explanation or lawful alternative may add a level of ambiguity to a fact's probative value in a probable cause determination, but it does not destroy the fact's usefulness outright and require it to be disregarded. -
€21 Indeed, Colorado courts and law enforcement frequently consider non-criminal and legally ambiguous conduct in probable ecause analyses, and the possibility of an innocent justification merely affects a fact's weight and persuasiveness, not its inclusion in the analysis. See People v. Pacheco, 175 P.3d 91, 95 (Colo. 2006) ("If only non-eriminal activity is corroborated, the question whether probable cause exists focuses on 'the degree of suspicion that attaches to [the] particular types of corroborated non-criminal acts....'" (quoting People v. Leftwich, 869 P.2d 1260, 1268 (Colo. 1994))); People v. McCoy, 870 P.2d 1231, 1237-38 & n. 9 (Colo. 1994) (holding that probable cause does not require specific information that a particular crime has been committed, and stating that the possibility of an innocent alternative explanation is merely a factor in the totality of the cireumstances test); People v. Atley, 727 P.2d 376, 378 (Colo. 1986) (holding that probable ecause existed to search an apartment for psilocybin mushrooms despite the possibility that the mushrooms were lawfully grown); of, Gates, 462 U.S. at 248 n. 18, 108 S.Ct. 2317 ("In making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or guilty," but the degree of suspicion that attaches to particular types of non-criminal acts.")[4] Omitting these types of facts from the analysis based on the possibility that they could arise from innocent behavior contravenes the very purpose of the totality of the cireumstances test by ignoring the possibility that they could equally give rise to an inference of eriminality.
22 Mendez helps to illustrate how facts that are ambiguous as to innocence or criminality fit into the totality of the cireum-stances test. In that case, the police responded to a trespass complaint at a motel and, while there, noticed the "strong odor of burning marijuana" emanating from a room directly across from the elevator, 986 P.2d at 278. We held that the officers' warrantless entry into the motel room fell under the exigent circumstances exception to the warrant requirement and was supported by probable cause that contraband or evidence of eriminal activity existed inside. Id, at 280, 288. In so holding, we rejected the defendant's argument that the police officers could not rely upon the odor of burning marijuana in their probable cause determination given that medicinal marijuana use was an affirmative defense to a charge of marijuana possession and the police "could not readily determine whether the marijuana was being used illegally or for medicinal purposes." Id, at 281 n. 4. As we reasoned, requiring police to know that certain contraband is being used in an illegal rather than a legal manner *1059 "would swallow the rule mandating that absolute certainty is not required before probable cause can be established. In fact, the Constitution has never required an officer to refrain from searching premises under circumstances in which the activity in question could potentially be legal." Id.
128 In sum, our precedent is consistent with the principle that, while a possible innocent explanation may impact the weight given to a particular, fact in a probable cause determination, it does not wholly eliminate the fact's worth and require it to be disregarded. Applying that principle to the trial court's order here, we note that while Amendment . 64 allows possession of one ounce or less of marijuana, a substantial number of other marijuana-related activities remain unlawful under Colorado law. Given that state of affairs, the odor of marijuana is still suggestive of criminal activity, Hence, we hold that the odor of marijuana is relevant to the totality of the cireumstances test and can contribute to a probable cause determination. See Harris, 188 S.Ct. at 1058 ("The questlon—sumﬂar to every inquiry into probable caquse-is whether all the facts surrounding a dog's alert; viewed through the lens of common sensé, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime. A sniff is up to snuff when it meets that test."); see also State v. Senna, 194 Vt. 288, TO 45 50-51 (2013) ("I Wle conclude that the trial court properly considered the odor of fresh marijuana emanating from defendant's home in assessing probable cause to search his residence.... [Thhe fact that Vermont has a registry of patients who are exempt from prosecution for possession or cultivation of marijuana does not undermine the significance of the smell of marijuana as an indicator of criminal activity."). The trial court therefore erred when it' dlsregarded the odor of marijuana in 1ts assessment of probable cause.
124 Having concluded that the odor of marijuana can properly be considered as part of the totality of the cireumstances test for probable cause, we now turn to the facts of this case to determine whether the trial court erred in determining that the Trooper lacked probable- cause to search the vehicle.
D. Application
$25 Based on the record in this case, we conclude that the Trooper had probable cause to search the vehicle because, under the totality of the cireumstances, a "fair probability existed] that a search of [the. vehicle would] reveal contraband or evidence of a crime." Mendez, 986 P.2d at 280.
126 First, Zuniga and the driver gave remarkably disparate accounts of their visit to Colorado. The driver stated that he and Zuniga arrived in Colorado four days prior, stayed in a hotel somewhere in the Denver ared, and did nothing at all. By contrast, Zuniga stated that he and the driver arrived in' Colorado two days prior, stayed with his grandmother somewhere in the Denver area, and spent their time visiting his ailing grandmother, traveling to the mountains, and walking along the Sixteenth Street Mall in Denver, The vast inconsistencies between the two men's stories lead to a reasonable infer-enee that the two men were attempting to conceal illegal conduct from the Trooper,
'127 Second, the Trooper testified that Zu-niga and his driving companion exhibited "extreme" nervousness, While nervousness is a natural reaction that any driver might have when confronted with law enforcement at a traffic stop, United States v. Wood, 106 F.3d 942, 948 (10th Cir. 1997), the Trooper's testimony here. makes it clear that the two men's nervousness in this case was exceptional and suggestive of suspicious activity, see United States v. Simpson, 609 F.3d 1140, 1147-48 (10th Cir. 2010) (holding that nervousness is a common reaction and can be difficult to evaluate but that "[elxtreme and persistent nervousness ... 'is entitled to somewhat more 'weight'" (quoting United States v. West, 219 F.3d 1171, 1179 (10th Cir. 2000))); People v. Morales, 935 P.2d 936, 941 n.7 (Colo. 1997) (noting that the United States Supreme Court has found reasonable suspi-clon, of drug trafﬁclung based in part upon nervous behavior (citing Florida v. Royer, 460 U.S. 491, 502, 103 S.Ct. 1819, 75 L.Ed.2d 229 (1988) (plurality opinion})); People v. Olson, 175 Colo. 140, 485 P.2d 891, 898 (1971) *1060 (holding that a suspicious demeanor is relevant to the totality of the cireumstances test for probable cause). Thus, the two men's extreme nervousness in this case also leads to a reasonable inference that illegal activity was ongoing during the traffie stop.
128 Third, the Trooper's detection of a "heavy odor" of raw marijuana contributed to the Trooper's conclusion that marijuana was in the vehicle; potentially in an illegal amount. As discussed above, the odor of marijuana remains relevant to probable cause determinations and can support an inference that a crime is ongoing even though possession of one ounce or less of marijuana is allowed under Colorado law, Many marijuana-related activities remain illegal in Colorado, meaning the detection- of a marijuana odor-particularly a "heavy" odor-still adds to the totality of the cireumstances and can contribute to a probable cause determination.
€ 29 Finally, Lobo's alert similarly suggested that illegal drugs were present in the vehicle. His alert could have stemmed from the two men's possession of a legal amount of marijuana, but it also could have stemmed from the possession of an ilegal amount of marijuana or any amount of cocaine, methamphetamine, or heroin, thus giving rise to an inference of criminality and contributing to the existence of probable cause,
T30' Armed with the two men's differing stories, their exceptional nervousness, the strong odor of raw marijuana, and Lobo's alert at the rear of the vehicle, the Trooper concluded that a "fair probability exist[ed] that a search of [the vehicle would] reveal contraband or evidence of a crime."[5] Mendez, 986 P.2d at 280. We agree with that determination and hold that the Trooper had probable cause to search the vehicle.[6] The trial court therefore erred in suppressing the evidence obtained from that search,
IV. Conclusion
1 31 We hold that the odor of marijuana is relevant to the totality of the cireumstances test and can contribute to a probable cause determination. Thus, the trial court in Zuni-ga's case erred when it disregarded the odor of marijuana in its probable cause analysis. Under the totality of the cireumstances in this case, the Trooper had probable cause to search the vehicle for illegal drugs, We therefore reverse the trial court's order suppressing evidence obtained from the search and remand for proceedings consistent with this opinion.
JUSTICE HOOD dissents.

. The trial court found reasonable suspicion for the traffic stop. That determination is not before us in this interlocutory appeal, See infra note 3.

. " 'Marijuana concentrate' means hashish, tet rahydrocannabinols, or any alkaloid, salt, derivative, preparation, compound, or mixture, whether natural or synthesized, of tetrahydro-cannabinols." § 18-18-102(19), C.R.S. (2015).

. In his answer brief, Zuniga, in addition to opposing the People on the probable cause issue, challenged some of the trial court's other findings. We do not address any of those issues, however, because CAR. 4.1 (a) does not allow a - defendant to bring an interlocutory appeal of a trial court decision that favors the prosecution. People v. Gothard, 185 P.3d 180, 183 (Colo. 2008); see also Smith, 254 P.3d at 1160.

. Cases from other jurisdictions also reaffirm the principle that non-criminal or legally ambiguous facts are germane to the totality of the circumstances test for probable cause. See, e.g., McCoy v. State, 491 P.2d 127, 130 (Alaska 1971) (holding that the possibility that the defendant procured contraband in an innocent manner "do[es} not negate the facts and circumstances within the officers' knowledge which supplied the probable cause basis for their belief that McCoy had committed a felony"); Bennett v. State, 345 Ark. 48, 44 S.W.3d 310, 313 (2001) (holding that the odor of denatured alcohol, a chemical used in methamphetamine manufacture, is part of the totality of the circumstances).

. The Trooper also testified about Zuniga's "overly nice" demeanor during the traffic stop. A ' person's "suspicious demeanor" can be a part of * the totality of the circumstances test for probable cause, see Olson, 485 P.2d at 893 ("'The combination of the suspicious demeanor of the three occupants of the vehicle and the subsequent odor of marijuana ... was a sufficient basis upon which to predicate probable cause. ..."), but under the facts of this case, we do not consider Zuniga's "overly nice" demeanor as supportive of probable cause.

. Because we conclude that all of the facts discussed above, together, establish probable cause, we need not and do not reach the People's alternative argument that the dog alert alone establishes probable cause in this case.