COLORADO COURT OF APPEALS                                   **2017COA93**

Court of Appeals No. 16CA0050
Moffat County District Court No. 15CR16
Honorable Michael Andrew O'Hara, III, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Kevin Keith McKnight,

Defendant-Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE DAILEY
Berger, J., specially concurs
J. Jones, J., specially concurs

Announced July 13, 2017

Cynthia H. Coffman, Attorney General, Paul Koehler, First Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, John B. Plimpton, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Since 2012, it has not been a violation of Colorado law for people who are at least twenty-one years old to possess up to one ounce of marijuana for personal use.  Colo. Const. art. XVIII, § 16(3)(a) (Amendment 64).  To be clear, such possession is neither a criminal violation nor a civil violation.

¶ 2     This case presents two questions arising from our state's marijuana laws and law enforcement's use of dogs trained to detect marijuana and other controlled substances.  First, does deploying a dog trained to detect marijuana to sniff a legitimately stopped vehicle constitute a "search" for purposes of the constitutional prohibitions of unreasonable searches?  If so, law enforcement may not deploy such a dog without reasonable suspicion of criminal activity.  Second, did the dog's alert in this case give police probable cause to search Kevin Keith McKnight's truck given that the dog was trained to alert if he detected either legal or illegal substances?

¶ 3     Two of us (Dailey and Berger, JJ.) agree with McKnight in answer to the first question, that is, that *under our state constitution*, the deployment of the dog here was a "search" requiring reasonable suspicion of criminal activity.  And because the totality of the relevant circumstances did not give police

reasonable suspicion to conduct a dog sniff of his truck, we conclude that the district court erred in denying his motion to suppress evidence found in the truck.

¶ 4     But two of us (J. Jones and Berger, JJ.) would also agree with McKnight in answer to the second question, that is, that the dog's alert, in combination with the other relevant circumstances, did not give the police probable cause to search his truck, and, for that reason, the district court erred in denying his motion to suppress evidence found in the truck.

¶ 5     Because all of us agree that the court's error in denying McKnight's motion to suppress was not harmless beyond a reasonable doubt, we reverse the district court's judgment of conviction and remand the case for further proceedings.

## I. Background

¶ 6     The police recovered a pipe containing white residue from McKnight's truck. The People charged him with possession of a controlled substance (based on the residue) and possession of drug paraphernalia. McKnight moved to suppress the evidence found in his truck, arguing that law enforcement officers violated his constitutional rights by conducting a dog sniff of his truck without

reasonable suspicion[1] and by otherwise searching his truck without probable cause.

¶ 7    At the suppression hearing, Officer Gonzales testified that he saw a truck parked in an alley.  The truck left the alley and eventually parked outside of a house for about fifteen minutes. This house, according to Officer Gonzales, had been the subject of a search roughly seven weeks earlier that had turned up illegal drugs. When the truck drove away, Officer Gonzales followed it, saw it turn without signaling, and pulled it over.

¶ 8    McKnight was driving the truck.  Officer Gonzales said he recognized McKnight's passenger from previous contacts with her, "including drug contacts" involving the use of methamphetamine. But when asked on cross-examination at what time, to his knowledge, the passenger had last used methamphetamine, Officer Gonzales declined to speculate about that and conceded that he

---

[1] He argued that reasonable suspicion was necessary because the dog sniff in and of itself was a "search" subject to state constitutional protections; he did not argue (nor does he argue here) that he was subjected to an unreasonably prolonged traffic stop. *See Rodriguez v. United States*, 575 U.S. ___, ___, 135 S. Ct. 1609, 1614-15 (2015).

was "just aware that at some point in the past she had been known to [him] as a user of methamphetamine."

¶ 9 At Officer Gonzales' request, Sergeant Folks came to the scene with his certified drug-detection dog, Kilo. Kilo is trained to detect cocaine, heroin, ecstasy, methamphetamine, and marijuana. He indicates that he has detected the odor of one of these substances by exhibiting certain behavior — barking, for example. His indicative behavior, however, does not vary based on the particular substance or amount of the substance he has detected.

¶ 10 When Sergeant Folks deployed Kilo to sniff McKnight's truck, Kilo displayed one of his trained indicators. Officers then told McKnight and the passenger to get out of the truck, searched it, and found a "glass pipe commonly used to smoke methamphetamine."

¶ 11 After the district court denied McKnight's suppression motion, the case proceeded to trial. A jury convicted McKnight of both counts.

## II. Discussion

### A. Standard of Review

¶ 12    When reviewing a suppression order, we defer to the district court's factual findings as long as evidence supports them, but we review de novo the court's legal conclusions. *Grassi v. People*, 2014 CO 12, ¶ 11.

### B. Was Kilo's Sniff a Search?

¶ 13    The Federal and State Constitutions give people the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV; Colo. Const. art. II, § 7; *People v. Zuniga*, 2016 CO 52, ¶ 14.

¶ 14    "Official conduct that does not 'compromise any legitimate interest in privacy' is not a search subject to the Fourth Amendment." *Illinois v. Caballes*, 543 U.S. 405, 408 (2005) (quoting *United States v. Jacobsen*, 466 U.S. 109, 123 (1984)). Any interest in possessing contraband is not legitimate. *Id.* And so official "conduct that *only* reveals the possession of contraband" does not compromise any legitimate privacy interest. *Id.* Applying that reasoning, the United States Supreme Court has held that employing a well-trained drug-detection dog during a lawful traffic stop does not implicate the Fourth Amendment because that is not

a search.  *Id.* at 409-10.  Likewise, our supreme court has held that such a sniff is not a search under our state constitution.  *People v. Esparza,* 2012 CO 22, ¶ 6.

¶ 15    Indeed, in *People v. Mason,* 2013 CO 32, the supreme court said:

> It is now settled that walking a trained narcotics detection dog around a car that has not been unlawfully stopped or detained does not implicate the protections of either the Fourth Amendment or Article II, section 7 of the state constitution.

*Id.* at ¶ 10.[2]

¶ 16    McKnight contends that a key premise underlying *Caballes* and *Esparza* — that a dog sniff reveals *only* contraband — is not

---

[2] In contrast, a government official's walking a drug-detecting dog around a residence would implicate Fourth Amendment protections.  *See Florida v. Jardines,* 569 U.S. ___, ___, 133 S. Ct. 1409, 1417-18 (2013) (house); *United States v. Whitaker,* 820 F.3d 849, 853-54 (7th Cir. 2016) (apartment).  The difference is attributable in large part to the different expectations of privacy associated with a home and a car.  *See Jardines,* 569 U.S. at ___, 133 S. Ct. at 1414 ("[W]hen it comes to the Fourth Amendment, the home is the first among equals.  At the Amendment's 'very core' stands 'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'" (quoting *Silverman v. United States,* 365 U.S. 505, 511 (1961))); *id.* at ___ n.1, 133 S. Ct. at 1419 n.1 ("[P]eople's expectations of privacy are much lower in their cars than in their homes.") (Kagan, J., concurring).

6

true in this case. An alert from Kilo, he argues, is not so definitive: it may reveal that a person possesses something legal (an ounce or less of marijuana) or something illegal (illegal amounts of marijuana or another controlled substance).

¶ 17    In neither *Mason* nor *Esparza* did the court address the effect of Amendment 64, which changed the landscape upon which issues of the type raised here are decided. For while possession of marijuana by anyone in any amount remains a crime under federal law, *see* 21 U.S.C. § 844(a) (2012), this is no longer the case under state law. Because Amendment 64 legalized possession for personal use of one ounce or less of marijuana by persons twenty-one years of age or older in Colorado, it is no longer accurate to say, at least as a matter of state law, that an alert by a dog which can detect marijuana (but not specific amounts) can reveal only the presence of "contraband."[3] A dog sniff could result in an alert with respect to something for which, under Colorado law, a person has a legitimate expectation of privacy, i.e., the possession of one ounce or less of marijuana for personal use.

---

[3] No question has been raised in this case about whether Amendment 64 is preempted by federal law.

¶ 18　　Because a dog sniff of a vehicle could infringe upon a legitimate expectation of privacy *solely under state law*, that dog sniff should now be considered a "search" for purposes of article II section 7 of the state constitution where the occupants are twenty-one years or older.　*Cf. Kyllo v. United States*, 533 U.S. 27, 34-40 (2001) (the use of a thermal imaging device to detect the growth of marijuana in a home was a "search" under the Fourth Amendment because the device was capable of detecting lawful activity); *see Curious Theatre Co. v. Colo. Dep't of Pub. Health & Env't*, 220 P.3d 544, 551 (Colo. 2009) (noting that local circumstances may justify applying a provision in the state constitution differently than a parallel provision in the Federal Constitution); *People v. Parks*, 2015 COA 158, ¶ 21 n.3 (noting instances where it was "decided that [a] governmental intrusion constituted a search under the State Constitution even though it did not constitute a search under the Federal Fourth Amendment").[4]

---

[4] It would still not be considered a "search" under the Fourth Amendment, though.　No one could contend, for instance, that a federal agent's use of dog to sniff a car for the presence of any amount of marijuana would constitute a "search" under the Federal

*C. What Level of Justification Was Required for the Search?*

¶ 19    Prior to *Esparza*, the supreme court had indicated that, because of its minimally intrusive nature, a warrantless "search" effected by a dog sniff had to be supported by "a reasonable articulable suspicion that the item sniffed contains evidence of a crime." *People v. Reyes*, 956 P.2d 1254, 1256 n.1 (Colo. 1998), *abrogated by Esparza*, 2012 CO 22; *see also People v. Boylan*, 854 P.2d 807, 811 (Colo. 1993) ("[A] dog-sniff search need be justified not by probable cause sufficient to obtain a search warrant, but instead by reasonable suspicion, similar to that required to stop and frisk a person suspected of involvement in imminent criminal activity."), *abrogated by Esparza*, 2012 CO 22; *People v. Unruh*, 713 P.2d 370, 379 (Colo. 1986) ("[T]he balance between governmental and individual interests in this case can best be struck by requiring only reasonable suspicion as a prerequisite for the sniff search."), *abrogated by Esparza*, 2012 CO 22.

¶ 20    Based on this reasoning, we conclude that "reasonable suspicion" is the state constitutional standard which applies to

Constitution. *See Illinois v. Caballes*, 543 U.S. 405, 409 (2005). And Fourth Amendment protections do not change simply because the actor using a drug-detecting dog changes.

9

searches effected by dog sniffs of the exterior of a vehicle. Thus, in determining whether the police could subject McKnight's truck to a dog sniff, the question is whether, prior to the dog sniff, they had grounds to reasonably suspect that evidence of illegal activity would be found in the truck.

¶ 21    The reasonable suspicion standard requires "considerably less than proof of wrongdoing by a preponderance of the evidence and is less demanding even than the 'fair probability' standard for probable cause." *People v. Polander*, 41 P.3d 698, 703 (Colo. 2001) (quoting *Alabama v. White*, 496 U.S. 325, 330 (1990)). It is satisfied if "'the police have specific and articulable facts, greater than a mere hunch, to support' their belief that the person to be stopped is or may have been involved in criminal activity." *People v. Huynh*, 98 P.3d 907, 912 (Colo. App. 2004) (quoting *Boylan*, 854 P.2d at 812).

¶ 22    "In considering whether reasonable suspicion exists, the court looks at the totality of the circumstances, the specific and articulable facts known to the officer at the time of the encounter, and the rational inferences to be drawn from those facts." *People v. Garcia*, 251 P.3d 1152, 1158 (Colo. App. 2010).

¶ 23    Here, the pertinent circumstances known to the police before the dog was called upon to sniff McKnight's truck were that (1) McKnight had sat parked for fifteen minutes outside a house in which illegal drugs had been found seven weeks before and (2) McKnight had a passenger in the truck who had used methamphetamine "at some point in the past." Those circumstances did not raise a reasonable suspicion that evidence of illegal activity would be found in McKnight's truck. The officer observed no one approach the truck from the house or approach the house from the truck. The officer had no objective basis, then, for suspecting that the truck's occupants had taken drugs into the truck from the house or from anywhere else for that matter.

¶ 24    Because, in our view, the police lacked the requisite reasonable suspicion to subject McKnight's truck to a dog sniff, the dog sniff was invalid, and the methamphetamine recovered as a result thereof should have been suppressed. The People do not contend, and we cannot conclude, that "the evidence properly received against [McKnight was] so overwhelming that the constitutional violation was harmless beyond a reasonable doubt."

*Bartley v. People*, 817 P.2d 1029, 1034 (Colo. 1991). We must reverse. *See id.*

### III. Conclusion

¶ 25    The judgment of conviction is reversed, and the case is remanded for further proceedings consistent with the views expressed in this opinion.

JUDGE BERGER specially concurs.

JUDGE J. JONES specially concurs.

JUDGE BERGER, specially concurring.

¶ 26    I agree with the majority's holding that there was no reasonable suspicion supporting the dog sniff and that reasonable suspicion was required because the dog was trained to alert both to contraband and non-contraband.

¶ 27    I write separately for two reasons.  First, while I do not think it is necessary to reach the probable cause determination — the issue upon which Judge Jones would decide this case — I agree with Judge Jones' conclusion that probable cause was absent (although it is a very close question).

¶ 28    Second, I think it is useful to explain how a person may have an enforceable expectation of privacy under state law while federal law provides no such reasonable expectation.

¶ 29    The people of Colorado spoke clearly when they adopted Amendment 64.  It is the duty of Colorado courts to give effect to that enactment.  *In re Great Outdoors Colo. Tr. Fund*, 913 P.2d 533, 538 (Colo. 1996).  The Attorney General does not contend that Amendment 64 is displaced by the Supremacy Clause of the Federal Constitution.  Under these circumstances, it is incumbent on us to apply Amendment 64.  Doing so creates a dichotomy between the

13

reasonable expectations of privacy under state and federal law because of the different laws enforced by state and federal law enforcement officers.

¶ 30     The "general rule" is that state law does not preclude state and local police from enforcing federal law. *See, e.g.*, *Miller v. United States*, 357 U.S. 301, 305 (1958); *Johnson v. United States*, 333 U.S. 10, 15 n.5 (1948); *Gonzales v. City of Peoria*, 722 F.2d 468, 474 (9th Cir. 1983), *overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999). However, while state law generally allows state and local law enforcement officers to enforce federal law, it need not do so. "It has long been held that power may be conferred upon a state officer, as such, to execute a duty imposed under an act of Congress, and the officer may execute the same, unless its execution is prohibited by the Constitution or legislation of the state." *Dallemagne v. Moisan*, 197 U.S. 169, 174 (1905).

¶ 31     Because Amendment 64 legalized possession of up to one ounce of marijuana for personal use by persons twenty-one years of age or older, it also "curtail[ed] police authority to enforce the Federal prohibition of possession of [up to one ounce] of

marijuana." *Commonwealth v. Craan,* 13 N.E.3d 569, 578 (Mass. 2014). Part of Amendment 64's stated purpose was to increase "the efficient use of law enforcement resources" and "individual freedom." Colo. Const. art. XVIII, § 16(1)(a). Allowing state and local officers to continue to enforce the federal prohibition would directly contravene this purpose. We must give effect to the voters' intent, *Bruce v. City of Colorado Springs,* 129 P.3d 988, 992 (Colo. 2006), and we will not adopt an interpretation that contravenes the purpose of Amendment 64.

¶ 32    Thus, while a person twenty-one years of age or older in possession of less than an ounce of marijuana does not have a reasonable expectation of privacy under federal law with respect to law enforcement activities of federal officers, *see Illinois v. Caballes,* 543 U.S. 405, 408-09 (2005), he or she does have a reasonable expectation of privacy under state law with respect to law enforcement activities of state officers.

JUDGE J. JONES, specially concurring.

¶ 33     I concur in the result reached by the majority.  But I do so because it seems to me that the police officers lacked probable cause to search McKnight's truck.

¶ 34     Courts have recognized that an alert from a dog trained to detect several substances, including marijuana, by itself may amount to probable cause justifying a search of a vehicle.  *Florida v. Harris*, 568 U.S. 237, 246-47 (2013); *People v. Esparza*, 2012 CO 22, ¶ 12.  But is that still true for purposes of article II, section 7 of the Colorado Constitution, given that state law now generally allows anyone who is at least twenty-one years old to possess small amounts of marijuana for personal use?  I consider that question, which our supreme court did not address directly in *People v. Zuniga*, 2016 CO 52, and *People v. Cox*, 2017 CO 8, and conclude that such a dog's alert alone no longer supplies probable cause where the occupants of the vehicle are twenty-one years or older and the officer conducting the search is not a federal officer.

¶ 35     In this case, a dog's alert was the only circumstance of any real weight giving rise to the police officers' decision to search McKnight's truck.  Therefore, I also conclude that the district court

erroneously denied McKnight's motion to suppress the evidence found during that search. And because that error was not harmless beyond a reasonable doubt, I agree with the majority that we must reverse the district court's judgment of conviction and remand the case for a new trial.

## I. Was Kilo's Sniff a Search?

¶ 36    As the majority points out, the United States Supreme Court, in *Illinois v. Caballes*, 543 U.S. 405, 408-10 (2005), held that a drug-detection dog's sniff of a vehicle is not a search under the Fourth Amendment, and the Colorado Supreme Court, in *Esparza*, ¶ 11, held that such a sniff is not a search under our state constitution.

¶ 37    McKnight contends that a key premise underlying *Caballes* and *Esparza* — that a dog sniff reveals *only* contraband — is not true in this case. An alert from Kilo, he argues, is not so definitive: it may reveal that a person possesses something legal (an ounce or less of marijuana) or something illegal (illegal amounts of marijuana or another controlled substance). But I need not decide whether Kilo's sniff constituted a search because, even if it did not, the officers lacked probable cause to search McKnight's truck.

17

## II. Did Kilo's Alert, By Itself, Create Probable Cause?

¶ 38 The Federal and State Constitutions give people the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV; Colo. Const. art. II, § 7; *Zuniga*, ¶ 14. A warrantless search is presumptively unreasonable, violating the Fourth Amendment unless it falls under an exception to the warrant requirement. *People v. Vaughn*, 2014 CO 71, ¶ 14. The automobile exception allows police officers to search an automobile without a warrant if they have probable cause to believe that it contains evidence of a crime. *Zuniga*, ¶ 14.

¶ 39 "A police officer has probable cause to conduct a search when 'the facts available to [the officer] would warrant a [person] of reasonable caution in the belief' that contraband or evidence of a crime is present." *Harris*, 568 U.S. at 243 (second alteration in original) (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983) (plurality opinion)). "[T]he information necessary to support a finding of probable cause need not rise to the level of certainty." *Mendez v. People*, 986 P.2d 275, 280 (Colo. 1999). In the end, "probable cause is a commonsense concept that requires judges to consider the totality of the circumstances to determine 'whether a

fair probability exists that a search of a particular place will reveal contraband or evidence of a crime.'" *Zuniga*, ¶ 16 (quoting *Mendez*, 986 P.2d at 280).

¶ 40     In *Zuniga*, the Colorado Supreme Court applied the probable cause standard under circumstances similar to those in this case. A trooper searched the defendant's vehicle after a drug-detection dog — trained to detect marijuana and other controlled substances — alerted to the vehicle. *Id.* at ¶ 6. Even though possessing marijuana does not violate Colorado law under some circumstances, the court concluded that the dog's alert "suggested that illegal drugs were present in the vehicle" and "contribut[ed] to the existence of probable cause." *Id.* at ¶ 29. And the court ultimately concluded that the trooper had probable cause to search the vehicle based on the dog's alert, the two passengers' "remarkably disparate accounts" of why they were in Colorado, the passengers' "extreme nervousness," and the heavy odor of raw marijuana. *Id.* at ¶¶ 26-30.

¶ 41     More recently, in *Cox*, the court reiterated that a dog's alert is part of the "totality of the circumstances" that the district court must consider, and similarly concluded that four facts combined to

establish probable cause to search the defendant's vehicle. *Cox,* ¶¶ 15, 17. These four facts were (1) an alert from a dog trained to detect marijuana and other controlled substances; (2) the defendant's unusual nervousness; (3) inconsistencies in the defendant's description of his travels; and (4) the presence of two cell phones in the defendant's vehicle. *Id.* at ¶¶ 15-22.

¶ 42 Before *Zuniga,* both the United States Supreme Court and the Colorado Supreme Court had recognized that an alert from a reliable drug-detection dog by itself might establish probable cause. *See Harris,* 568 U.S. at 246-47; *Esparza,* ¶ 12. In both *Zuniga* and *Cox,* however, the supreme court expressly did not consider directly whether, given the recent changes to marijuana's status in Colorado, an alert from a dog trained to detect marijuana and other controlled substances by itself establishes probable cause to search a vehicle. *Cox,* ¶ 22 n.5; *Zuniga,* ¶ 30 n.6. I conclude that, for purposes of the Colorado Constitution, it does not.

¶ 43 *Zuniga* and *Cox* leave no doubt that Kilo's alert supplied some level of suspicion. "A possible innocent explanation or lawful alternative may add a level of ambiguity to a fact's probative value in a probable cause determination, but it does not destroy the fact's

20

usefulness outright and require it to be disregarded." *Zuniga*, ¶ 20. Because an alert from Kilo might be the product of legal or illegal conduct, his alert added to the probability that a search would reveal evidence of a crime. *See id.* at ¶ 29; *see also Cox*, ¶ 17.

¶ 44 But although Kilo's alert increased the likelihood that McKnight's truck contained evidence of a crime, a significant level of ambiguity arose from the combination of Kilo's training and Colorado's marijuana laws. At bottom, Kilo's alert communicated only that he detected either a legal substance or an illegal substance. That information would not, by itself, warrant a person of reasonable caution to believe that McKnight's truck contained contraband or evidence of a crime. *See Harris*, 568 U.S. at 242-44; *State v. Shabeeb*, 194 Wash. App. 1032, ¶ 20, 2016 WL 3264421, at *3 (Wash. Ct. App. 2016) (unpublished opinion) ("The State concedes and we agree that since the decriminalization of marijuana, a K–9 alert *standing alone* no longer establishes probable cause when the K–9 was trained to alert on multiple narcotics, one of which is marijuana.").

¶ 45 I am not persuaded by the People's reliance on *Mendez*, in which the supreme court determined that officers had probable

21

cause to search the defendant's motel room after smelling burning marijuana emanating from the room. 986 P.2d at 280. At the time, medicinal use of marijuana provided an affirmative defense to a possession charge under Colorado law. *Id.* at 281 n.4. Even so, the court rejected the defendant's argument that the smell of burning marijuana did not create probable cause because the officers could not determine whether the room's occupant was using marijuana illegally or medicinally. *Id.* In my view, legalizing marijuana (to some degree) creates far more ambiguity as to whether possessing it is probative of criminal conduct than does simply providing an affirmative defense for its medicinal use.

¶ 46    For similar reasons, the cases from other states on which the People rely carry little force. *State v. Smalley*, 225 P.3d 844, 847-48 (Or. Ct. App. 2010), was decided when possessing less than an ounce of marijuana in Oregon, though not a criminal offense, remained a "violation." *See also Bowling v. State,* 134 A.3d 388, 394-98 (Md. Ct. Spec. App. 2016) (because possession of small amounts of marijuana remains a civil violation, all marijuana is contraband). And *People v. Strasburg,* 56 Cal. Rptr. 3d 306, 309 (Cal. Ct. App. 2007), was decided when California law permitted a

"qualified patient" to possess up to eight ounces of marijuana. Neither *Smalley* nor *Strasburg* addressed the legal landscape that we face in Colorado, where people who are at least twenty-one years old may legally possess up to an ounce of marijuana for personal use.

¶ 47    I recognize, as the People point out, that possessing any amount of marijuana remains illegal under federal law. *Coats v. Dish Network, LLC*, 2015 CO 44, ¶ 19. Nevertheless, I believe that, at least for purposes of determining whether there is probable cause under the Colorado Constitution, *Zuniga* makes clear that Colorado's marijuana laws have added a level of ambiguity to the probative value of evidence suggesting that a person possesses marijuana. *See Zuniga*, ¶¶ 20, 23. So I could not, consistent with *Zuniga*, simply conclude that marijuana's federal status clarifies the ambiguity created by Kilo's readiness to alert if he detects marijuana.

¶ 48    For the foregoing reasons, I conclude that a drug-detection dog's alert does not alone give a Colorado state law enforcement

officer probable cause to conduct a search of a vehicle where the occupants are at least twenty-one years old.[1]

### III. Did the Totality of the Circumstances Establish Probable Cause for the Search?

¶ 49    Though Kilo's alert did not alone give probable cause for the search of McKnight's truck, it was of course indicative of possible criminal activity. *Id.* at ¶ 29. So the question remains whether the totality of the circumstances, including Kilo's alert, established probable cause for the search. *See id.* at ¶ 16.

¶ 50    The People rely on only two additional facts to support a finding of probable cause — that McKnight parked outside a house in which drugs had been found and that Officer Gonzales knew that McKnight's passenger had used methamphetamine "at some point in the past." A close look shows that these facts are too vague and attenuated to have suggested that McKnight's truck contained evidence of criminal activity.

---

[1] The result would be different if the dog was not trained to detect marijuana, or if the vehicle's occupants were not at least twenty-one years old. And I do not opine as to whether the change in Colorado's marijuana laws affects the Fourth Amendment analysis; like the majority, my analysis is limited to the Colorado Constitution.

¶ 51    That illegal drugs (the motions hearing transcript is silent as to what kind or how much) had been found in the house more than seven weeks earlier says little, if anything, about whether it contained illegal drugs when McKnight parked nearby. Moreover, Officer Gonzales did not say that anyone in McKnight's truck approached the house or that anyone from inside the house approached McKnight's truck. McKnight's mere parking by a house that had once contained illegal drugs simply did not suggest that McKnight's truck had illegal drugs in it. *See People v. Revoal,* 2012 CO 8, ¶ 16 ("standing alone, a history of past criminal activity in a locality does not justify suspension of the constitutional rights of everyone, or anyone, who may subsequently be in that locality").

¶ 52    Similarly unsuspicious is that McKnight's passenger had used methamphetamine sometime in the past. For all we know, the passenger may have been clean for years before Officer Gonzales saw her in McKnight's truck. In any case, the information that Officer Gonzales conveyed about the passenger's past drug use did not suggest that the passenger or McKnight had illegal drugs when Officer Gonzales stopped them. *Cf. United States v. Kennedy*, 427 F.3d 1136, 1142 (8th Cir. 2005) ("information of an unknown and

25

undetermined vintage relaying the location of mobile, easily concealed, readily consumable, and highly incriminating narcotics could quickly go stale in the absence of information indicating an ongoing and continuing narcotics operation").

¶ 53    I am aware that I must consider these facts together with Kilo's alert in assessing whether there was probable cause. *Cox*, ¶ 14. But after doing so I am simply not convinced that there was probable cause. In my view, the additional facts do nothing to clear up the ambiguity arising from Kilo's alert.

¶ 54    In sum, I conclude that the information available to the officers who searched McKnight's truck did not give them probable cause to believe that it contained evidence of a crime. For that reason, the district court erred when it denied McKnight's motion to suppress the evidence obtained from the search. *See id.* The People do not contend, and I cannot conclude, that "the evidence properly received against [McKnight was] so overwhelming that the constitutional violation was harmless beyond a reasonable doubt." *Bartley v. People*, 817 P.2d 1029, 1034 (Colo. 1991). Therefore, I agree with the majority that we must reverse. *See id.*