Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
May 20, 2019

**2019 CO 37**

**No. 18SA208,** *People v. Gadberry*—Searches and Seizures—Drug-Detection Dog—
**Probable Cause.**

At issue in this interlocutory appeal is whether law enforcement needed probable

cause before deploying a drug-detection dog that was trained to alert to both marijuana

and other substances. Adopting the analytical framework announced today in the

companion case, *People v. McKnight*, 2019 CO 36, __ P.3d __, the supreme court holds that

the officers needed probable cause before deploying such a drug-detection dog, and a

defendant's statements regarding the presence or non-presence of marijuana does not

change this. Because the officers did not have probable cause, the drug-detection dog

never should have been deployed. Accordingly, we affirm the trial court's suppression

order.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

---

**2019 CO 37**

---

**Supreme Court Case No. 18SA208**
*Interlocutory Appeal from the District Court*
Mesa County District Court Case No. 17CR2426
Honorable Valerie J. Robison, Judge

---

**Plaintiff-Appellant:**

People of the State of Colorado,

v.

**Defendant-Appellee:**

Amanda Eileen Gadberry.

---

**Order Affirmed**
*en banc*
May 20, 2019

---

**Attorneys for Plaintiff-Appellant:**
Daniel P. Rubinstein, District Attorney, Twenty-First Judicial District
Brian Conklin, Deputy District Attorney
*Grand Junction, Colorado*

**Attorneys for Defendant-Appellee:**
Megan Ring, Public Defender
Kristin Westerhorstmann, Deputy Public Defender
*Grand Junction, Colorado*

**JUSTICE HOOD** delivered the Opinion of the Court.
**CHIEF JUSTICE COATS** dissents, and **JUSTICE BOATRIGHT** and **JUSTICE SAMOUR** join in the dissent.
**JUSTICE SAMOUR** dissents, and **JUSTICE BOATRIGHT** joins in the dissent.

¶1 Marijuana isn't meth. But drug-detection dog Talu can't tell the difference. So when Talu alerted to the driver and passenger side doors of Amanda Gadberry's truck, the officers didn't know whether Talu had found marijuana, which is legal in some circumstances in Colorado, or meth, which never is. This quandary led us in *People v. McKnight*, a companion case also announced today, to hold that persons twenty-one years of age or older have a reasonable expectation of privacy in the possession of one ounce or less of marijuana in Colorado, therefore requiring officers to have probable cause that an item or area contains a drug in violation of state law before they deploy a dog trained to alert to marijuana. *See* 2019 CO 36, ¶ 7, __ P.3d __. We see no difference between Gadberry's situation and McKnight's. Thus, Talu's wide-ranging, though outdated, training demanded probable cause before the drug-detection dog's deployment, just as it did in *McKnight*.

¶2 In this interlocutory appeal, we therefore hold that the officers needed probable cause to deploy Talu. They didn't have it. Accordingly, we affirm the trial court's suppression order.

## I. Facts and Procedural History

¶3 While patrolling Mesa County, Deputy Stuckenschneider observed a black Dodge pickup driving with a missing front license plate. Stuckenschneider phoned Deputy Briggs, alerting her to the situation. But this wasn't just any vehicle with a missing front plate—a few days prior, Sergeant Beagley had stopped the same car for being incorrectly registered and for displaying invalid license plates. Briggs knew all of this when she

received the alert from Stuckenschneider. With knowledge of the previous stop and Stuckenschneider's observation regarding the front plate, Briggs pulled the Dodge over. In the driver's seat, she found Gadberry.

¶4 Briggs informed Gadberry that she initiated the stop because of the missing front plate. Gadberry told Briggs that the car indeed had a front plate and, upon inspection, Briggs found the missing plate shoved into the grill of the Dodge, although the car was still improperly registered. While all of this was happening, Beagley, Handler Cheryl Yaws, and dog Talu, who is trained to alert to methamphetamine, cocaine, heroin, and marijuana, arrived on the scene. During the time that it took Briggs to run Gadberry's plates, Beagley asked Gadberry if there was any marijuana in the vehicle. She said no.

¶5 Shortly thereafter, Talu sniffed around the car and alerted to the driver and passenger doors. With the benefit of that alert, the officers conducted a search of the car, finding a cellophane wrapper of methamphetamine lodged inside a wallet. Gadberry was then charged with (1) display of a fictitious license plate, (2) possession of drug paraphernalia, and (3) possession of a controlled substance.

¶6 Gadberry moved to suppress the evidence on four grounds: (1) Briggs didn't have reasonable suspicion to initiate the stop; (2) the stop was unreasonably prolonged; (3) Talu's sniff was unlawful because Talu was trained to alert on both marijuana, a legal substance, and illegal substances, such as methamphetamine; and (4) Talu's sniff was unreliable. The trial court denied claims one and two. It held that the "fellow officer rule" imputed Stuckenschneider's knowledge of the missing front plate and improper

3

registration to Briggs, therefore justifying the stop. Additionally, it found that the stop only lasted long enough for Briggs to obtain information, view the vehicle, and run the plates. As a result, the court concluded that the officers didn't unreasonably delay Gadberry.

¶7 The trial court did, however, grant Gadberry's motion to suppress based on claim three. It followed the court of appeals' decision in *People v. McKnight*, 2017 COA 93, __ P.3d __, and found that a sniff is a search when a drug-detection dog can alert to both illegal and legal substances. Here, no one presented any evidence suggesting that the vehicle had any illegal substances in it or that Gadberry was aware of all the belongings in the car, especially since multiple people had driven the car in the few days before the stop. Therefore, the trial court reasoned that, under *McKnight*, the officers on the scene needed reasonable suspicion that Gadberry had been involved in criminal activity to initiate Talu's sniff. Because the officers here lacked reasonable suspicion to deploy Talu, the court granted the motion to suppress and didn't reach claim four.

¶8 The People filed the interlocutory appeal at issue here, raising the following question: Did the trial court err in finding that a free air sniff of the Defendant's vehicle by a dog trained in marijuana and illegal narcotics was a search, which required a showing of reasonable suspicion?

## II. Analysis

¶9 We start with the standard of review and a quick synopsis of relevant search and seizure caselaw. As we hold today in *McKnight*, article II, section 7 of the Colorado

4

Constitution provides persons twenty-one years of age or older with a reasonable expectation of privacy in the lawful activity of possessing an ounce or less of marijuana, therefore necessitating probable cause that an item or area contains a drug in violation of state law before officers deploy dogs trained to alert to marijuana. *See McKnight*, ¶ 7. Gadberry is such an individual—regardless of her statements about the contents of the vehicle—and, therefore, the officers needed probable cause that the vehicle contained a drug in violation of state law before they conducted an exploratory sniff. Because there was no such probable cause here, the officers impermissibly deployed Talu.

## A. Standard of Review

¶10    For suppression orders, we review legal conclusions de novo but defer to factual findings that have record support. *See People v. Gutierrez*, 222 P.3d 925, 931–32 (Colo. 2009). Thus, we review the constitutionality of the sniff de novo.

## B. The Officers Needed Probable Cause to Deploy Talu

¶11    The narrow question before us is only whether Talu's sniff required probable cause. The validity of the investigatory stop is not at issue. Here, where the drug-detection dog was trained to alert to marijuana, the officers needed probable cause that the vehicle contained a drug in violation of state law before conducting the exploratory sniff. *See McKnight*, ¶ 7.

¶12    Both the U.S. Constitution and the Colorado Constitution protect against unreasonable searches and seizures. *See* U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches

and seizures, shall not be violated . . . ."); Colo. Const. art. II, § 7 ("The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures . . . ."). As a result, when a person has a reasonable expectation of privacy, the prohibition on unreasonable searches and seizures protects a citizen from governmental intrusion. *See Kyllo v. United States*, 533 U.S. 27, 33 (2001); *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring).

¶13    The yardstick, however, is that there must be a *reasonable* expectation of privacy. And both the Supreme Court and this court have held that there is no reasonable expectation of privacy in contraband. *See Illinois v. Caballes*, 543 U.S. 405, 408–09 (2005); *People v. Esparza*, 2012 CO 22, ¶ 11, 272 P.3d 367, 370. Accordingly, a sniff, which typically "does not expose noncontraband items that otherwise would remain hidden from public view," during an otherwise legal stop isn't an unreasonable search prohibited by either the federal or state constitution. *Caballes*, 543 U.S. at 409 (quoting *United States v. Place*, 462 U.S. 696, 707 (1983)); *accord Esparza*, ¶ 11, 272 P.3d at 370.

¶14    In the companion case, we hold that this isn't always the case. *See McKnight*, ¶ 7. There, a dog trained to alert to both marijuana and state-banned substances alerted to methamphetamine in a vehicle. *Id.* at ¶¶ 12–14. These facts bear an uncanny resemblance to our current case. The People, however, argue that there is a crucial difference: McKnight never stated that there wasn't any marijuana in the car. But we fail to see the relevance of that fact. An expectation of privacy doesn't disappear once a citizen states that certain items aren't in the car or on their person. Talu might still alert

to marijuana, regardless of Gadberry's statements, and it's this potential to reveal lawful activity that renders Talu's sniff suspect.

¶15    Consider whether Gadberry uttering that there is "nothing" in the car versus there isn't any "marijuana" in the car should yield any doctrinal difference. If Gadberry states that there's nothing in the car, or says nothing, Talu still might still alert to legal activity — the possession of one ounce or less of marijuana. That's why we held in *McKnight* that probable cause is required. *McKnight*, ¶¶ 54–55. It's only once someone discloses the presence of contraband, rather than withholding disclosure, that an expectation of privacy is lost. *See, e.g.*, *People v. Carper*, 876 P.2d 582, 584–85 (Colo. 1994) (holding that the defendant didn't have a subjective expectation of privacy in the contents of his shirt pocket after disclosing the presence of cocaine in the pocket to police officers). Thus, when someone says that there is "nothing" in the car, that might assert that person's privacy interest by refusing to disclose the presence of something in which the person has a reasonable expectation of privacy.

¶16    That Gadberry stated that there wasn't any marijuana in the car, rather than "nothing," doesn't change this analysis. Gadberry still refused to disclose the presence of marijuana, thereby asserting her privacy interest in lawful activity. And regardless of any such assertion, Talu is still able to detect lawful activity, and the sniff "can no longer be said to detect 'only' contraband." *McKnight*, ¶ 43. Gadberry's statements do nothing to help the officers parse out whether the alert was for meth or marijuana: Talu doesn't

7

have a mastery of the English language and still gives the same alert for all trained substances. In other words, Gadberry's declarations are gobbledygook to Talu.

¶17    There also exists a practical problem with following the People's analysis. If we were to hold that disclosing the *lack* of marijuana to an officer results in permission to sniff a car, we would be urging drivers to always assert that there is marijuana in the vehicle. We would thus be encouraging citizens to lie to the police so that they may maintain their constitutional rights. No source of law compels that absurdity.

¶18    Therefore, the officers needed probable cause that the vehicle contained illegal narcotics before they deployed Talu.

## C. The Officers Lacked Probable Cause to Deploy Talu

¶19    The only information that any of the several officers involved in the stop had was: (1) the Dodge had been stopped a few days prior and had improper registration and (2) the vehicle was, apparently, missing a front plate. While these two facts might have been enough to initiate the stop, they certainly didn't "warrant a [person] of reasonable caution in the belief" that a drug in violation of state law was present in the vehicle. *McKnight*, ¶ 51 (alteration in original) (citing *People v. Zuniga*, 2016 CO 52, ¶ 16, 372 P.3d 1052, 1057). Indeed, there is nothing in the record that suggests any illegal narcotic involvement at all, previously or at the time of the stop. As a result, the officers didn't have probable cause and shouldn't have deployed Talu.

## III.  Conclusion

¶20    Gadberry's declaration that her Dodge contained no marijuana didn't strip her of her constitutional rights.  We therefore hold that the officers needed probable cause before deploying Talu and that such cause wasn't present here.  Accordingly, we affirm the trial court's suppression order.

**CHIEF JUSTICE COATS** dissents, and **JUSTICE BOATRIGHT** and **JUSTICE SAMOUR** join in the dissent.

**JUSTICE SAMOUR** dissents, and **JUSTICE BOATRIGHT** joins in the dissent.

CHIEF JUSTICE COATS, dissenting.

¶21    For the reasons articulated in my dissenting opinion in *People v. McKnight*, 2019 CO 36, __ P.3d __, also reported by the court today, I would reverse the trial court's suppression order.

¶22    I therefore respectfully dissent.

I am authorized to state that JUSTICE BOATRIGHT and JUSTICE SAMOUR join in this dissent.

JUSTICE SAMOUR, dissenting.

¶23    I respectfully dissent.  For the reasons articulated in my dissenting opinion in the companion case of *People v. McKnight*, 2019 CO 36, __ P.3d __, including my agreement with the Chief Justice's dissenting opinion in that case, I would reverse the trial court's suppression order.

I am authorized to state that JUSTICE BOATRIGHT joins in this dissent.