# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
April 3, 2024 Session[1]

## STATE OF TENNESSEE v. ANDRE JUJUAN LEE GREEN

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for Montgomery County**
**No. CC20-CR-537  Robert Bateman, Judge**

_____

**No. M2022-00899-SC-R11-CD**

_____

This appeal presents the issue of how the legalization of hemp affects a probable cause analysis where law enforcement relied, in part, on a positive alert from a drug-sniffing canine incapable of differentiating between the smell of legal hemp and illegal marijuana. After initiating a routine traffic stop, law enforcement conducted an open-air sniff using a drug-sniffing canine. Based on the canine's positive alert on the vehicle, combined with other facts observed by the officer, law enforcement searched the vehicle without a warrant pursuant to the automobile exception to the warrant requirement. The search revealed the following items inside a backpack: one ounce of marijuana, a loaded handgun, Ziploc bags, and a scale. The defendant, a passenger in the vehicle, was indicted for possession of marijuana with intent to manufacture, sell, or deliver; possession of a firearm with intent to go armed during the commission of a dangerous felony; and possession of drug paraphernalia. The defendant filed a motion to suppress, arguing that the canine sweep could not provide probable cause because the canine could not distinguish between the smell of legalized hemp and illegal marijuana. The trial court granted the motion to suppress and dismissed the charges against the defendant. The Court of Criminal Appeals reversed by holding that the smell of illegal marijuana provides law enforcement with probable cause to search a vehicle. Alternatively, the intermediate court held that law enforcement possessed probable cause based on the totality of the circumstances. The defendant appealed to this Court, and we granted review. First, we clarify that *State v. England*, 19 S.W.3d 762 (Tenn. 2000), does not provide a per se rule of probable cause based on a positive indication from a drug-sniffing dog. Rather, *England* provides for an examination of the totality of the circumstances. Second, we hold that a positive indication from a drug-sniffing canine may continue to contribute to a finding of probable cause when examining the totality of the circumstances, notwithstanding the legalization of hemp. After examining the totality of the circumstances in this case, we conclude that law

---

[1] We heard oral argument in this case at Cecil C. Humphreys School of Law in Memphis, Tennessee.

enforcement possessed probable cause to search the vehicle. As a result, we affirm the judgment of the Court of Criminal Appeals reinstating the indictments against the defendant and remanding for further proceedings.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Affirmed; Remanded to the Trial Court**

ROGER A. PAGE, J., delivered the opinion of the court, in which HOLLY KIRBY, C.J., and JEFFREY S. BIVINS, SARAH K. CAMPBELL, and DWIGHT E. TARWATER, JJ., joined.

Gregory D. Smith and Chason T. Smith, Clarksville, Tennessee, for the appellant, Andre JuJuan Lee Green.

Jonathan Skrmetti, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; and Benjamin A. Ball, Senior Assistant Attorney General, for the appellee, State of Tennessee.

Jonathan Harwell and Benjamin K. Raybin, Nashville, Tennessee, for the amicus curiae, Tennessee Association of Criminal Defense Lawyers; Joseph W. Fuson and Kristen Johnson, Nashville, Tennessee, for the amicus curiae, Tennessee Growers Coalition.

## OPINION

### I. FACTS AND PROCEDURAL HISTORY

This case involves a probable cause determination by law enforcement based, in part, on a positive alert from a drug-sniffing canine incapable of differentiating between the smell of legal hemp and illegal marijuana. The underlying factual summary as agreed by both parties is as follows:[2]

> On February 16, 2020, Officer Andrew Trescott completed a traffic stop on a vehicle being driven by Mr. Julio Chavez for operating his vehicle on high beams on Crossland Avenue in Clarksville, Tennessee. Mr. Andre Green was the passenger in the vehicle.

---

[2] This case is before us following the trial court's granting of a motion to suppress. The transcript of the suppression hearing is not included in the record on appeal. However, the trial court's order granting Andre Green's ("Defendant") motion to suppress states that the parties stipulated to the factual summary in Defendant's motion. Due to Defendant's factual summary contained in his motion serving as the basis upon which the trial court made its ruling, we find it appropriate to quote it in its entirety.

Officer Trescott made contact with Mr. Chavez first upon approach to the vehicle. During the interaction, Officer Trescott indicated that he could smell a strong odor of a fragrance coming from the vehicle. Mr. Chavez told Officer Trescott that it was from the three fragrance pine trees that he had hanging off the mirror. Mr. Chavez denied consent to search the vehicle. Once Mr. Chavez denied consent to search, Officer Trescott ordered both Mr. Chavez and Mr. Green out of the vehicle. Once they were out of the vehicle, Officer Trescott made the decision to [call] PSD [police service dog] Arlo to conduct an open air sniff of the vehicle.

Prior to searching the vehicle, Officer Trescott observed a black backpack in between his[3] feet. Both occupants initially stated that the bag did not belong to them. Officer Trescott then had PSD Arlo conduct an open air [sniff] where the dog indicated on the vehicle. After PSD Arlo indicated on the vehicle, Officer Trescott asked each occupant if there was anything in the vehicle, both occupants stated no. Mr. Chavez stated that he did not have anything in [the] vehicle. Upon being told that he too could be charged with anything in the vehicle, he immediately looked at Mr. Green and prodded him to talk. Mr. Green stated that he had picked up the backpack from his brother but he didn't know what was in it. A search of the backpack was completed, Officer Trescott found just below one ounce of marijuana, a loaded Smith & Wesson 9mm, Ziploc bags and a working scale. Two cell phones were found on Mr. Green's person, one was a TCL phone, the charger for the TCL phone was found in the backpack.

On June 2, 2020, a Montgomery County grand jury indicted Defendant for possession of marijuana with intent to manufacture, sell or deliver; possession of a firearm with intent to go armed during the commission of a dangerous felony; and possession of drug paraphernalia. Following his indictment, Defendant filed a motion to suppress arguing that "a canine sweep is no longer valid to establish probable cause since a canine cannot distinguish between the smell of hemp, which is legal, and marijuana, which is illegal." The trial court granted the motion to suppress by ruling that "[b]ased on the lack of proof of whether the drug detection canine in this case can distinguish between legal hemp and illegal marijuana . . . , the Court finds the reliability of the drug detection canine has not been established." The court later dismissed the charges against Defendant.

---

[3] In isolation, it is unclear whether the pronoun "his" refers to Mr. Chavez or Defendant. However, Defendant's brief to this Court uses a pair of brackets to replace "his" with "Green's." Defendant's clarification is consistent with how the Court of Criminal Appeals interpreted the record. *See State v. Green*, No. M2022-00899-CCA-R3-CD, 2023 WL 3944057, at *3 (Tenn. Crim. App. June 12, 2023), *perm. app. granted* (Tenn. Nov 20, 2023) ("Then, when he inquired about the backpack between the defendant's feet . . . ."). Furthermore, Officer Trescott's affidavit of complaint states: "Prior to me searching, I asked about a backpack that was at Mr. Green's feet."

The State appealed to the Court of Criminal Appeals, arguing that "the trial court erred in granting the defendant's motion to suppress because the scent of marijuana provided probable cause for the search regardless of the possibility that legal hemp could be the source of the odor." *State v. Green*, No. M2022-00899-CCA-R3-CD, 2023 WL 3944057, at *2 (Tenn. Crim. App. June 12, 2023), *perm. app. granted* (Tenn. Nov 20, 2023). The Court of Criminal Appeals agreed with the State and reversed the trial court's ruling. *Id.* at *4. The intermediate court concluded that "at this juncture the binding precedent from the Tennessee Supreme Court allows the smell of [illegal] marijuana to provide probable cause for a search," citing to *State v. Hughes*, 544 S.W.2d 99, 101 (Tenn. 1976). *Id.* at *3. Although the court held that "the alert of a trained drug detection canine is alone sufficient" to establish probable cause, the court alternatively held that the finding of probable cause was even more evident when reviewing the totality of the circumstances, such as Officer Trescott smelling a "strong odor" and both occupants of the vehicle denying ownership of the backpack between Defendant's feet. *Id.*

This Court granted Defendant's application for permission to appeal to consider how the legalization of hemp affects a probable cause analysis where law enforcement relied, in part, on a positive alert from a drug-sniffing canine incapable of differentiating between the smell of legal hemp and illegal marijuana. To that end, the overarching question we must answer is whether law enforcement possessed probable cause under the automobile exception to the warrant requirement to search the vehicle in which Defendant was a passenger.

## II. LEGAL BACKGROUND

The legal analysis of this case involves the distinction between hemp and marijuana. "Both cultivars, marijuana and hemp, are the same plant - *Cannabis sativa*." Tenn. Bureau of Investigation, *Hemp & Marijuana*, https://www.tn.gov/tbi/crime-issues/crime-issues/hemp---marijuana.html (last visited August 21, 2024). "*Cannabis sativa* has been cultivated for both its psychoactive properties (marijuana) and as a source of fiber (hemp)." *Id.* However, hemp and marijuana differ based on the amount of THC they contain. *See* Tenn Code. Ann. § 43-27-101(3) (providing the legal definition of hemp). "THC, or tetrahydrocannabinol, is the principal psychoactive chemical of the cannabis plant." Tenn. Bureau of Investigation, *Hemp & Marijuana*, https://www.tn.gov/tbi/crime-issues/crime-issues/hemp---marijuana.html (click "What is THC?" under "Frequently Asked Questions") (last visited August 21, 2024).

Before considering the arguments relating to probable cause from both parties and the amici curiae, Tennessee Growers Association and Tennessee Association of Criminal Defense Lawyers, it is necessary briefly to note the changes in federal and state law regarding hemp and marijuana. In 2018, Congress passed the Agricultural Improvement

Act ("Farm Bill"). The Farm Bill modified the definition of "marijuana" in the Controlled Substances Act by providing that it does not include "hemp." Agricultural Improvement Act of 2018, Pub. L. No. 115-334, § 12619, 132 Stat. 4490, 5018. The United States Code defines hemp as "the plant Cannabis sativa L. and any part of that plant, including the seeds . . . and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers . . . with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639*o*(1).

In 2019, Tennessee followed the lead of the federal government by also removing hemp from the definition of marijuana in the Tennessee Code. Act effective April 4, 2019, ch. 87 § 1, 2019 Tenn. Pub. Acts, https://publications.tnsosfiles.com/acts/111/pub/pc0087.pdf (codified at Tenn. Code Ann. § 39-17-402(16)(C)). Tennessee Code Annotated section 39-17-402(16)(C) now provides that "'[m]arijuana' . . . does not include hemp, as defined in [section] 43-27-101." Hemp is defined in section 43-27-101(3) as it is defined in the federal code.[4] Thus, in Tennessee, marijuana is defined as Cannabis sativa containing greater than 0.3% THC, while hemp is defined as Cannabis sativa containing not more than 0.3% THC. Tenn. Code. Ann. § 43-27-101(3). Due to the removal of hemp from the definition of marijuana, the possession of hemp is legal in Tennessee. *See* Tenn. Code Ann. §§ 39-17-402(16)(C), -415(c), -417.

### III. STANDARD OF REVIEW

The standard of review involving a motion to suppress is well-settled. "[A] trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). Questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Id.* However, "the application of the law to the facts is a question of law that appellate courts review de novo with no presumption of correctness." *State v. Bell*, 429 S.W.3d 524, 529 (Tenn. 2014) (citing *State v. Moats*, 403 S.W.3d 170, 177 (Tenn. 2013) (overruled in part on other grounds); *State v. Echols*, 382 S.W.3d 266, 277 (Tenn. 2012)).

In this case, the trial court noted that the parties stipulated to the underlying facts of the search and seizure, as well as that the "canine would be otherwise qualified."

---

[4] Similar to the United States Code, Tennessee Code Annotated section 43-27-101(3) states:

> "Hemp" means the plant cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol (THC) concentration of not more than three-tenths of one percent (0.3%) on a dry weight basis[.]

Regarding the canine's qualifications, Defendant stated in his motion to suppress that "the dog is trained to detect the odor of marijuana, cocaine, methamphetamine and heroin." We accept the parties' stipulations regarding the factual background and qualifications of the canine as relied upon by the trial court because the evidence does not preponderate otherwise. *See Odom*, 928 S.W.2d at 23.

The trial court only highlighted one unresolved finding of fact, a fact which it found to be determinative for its ruling: "whether the canine c[ould] distinguish between legal hemp and illegal marijuana." The trial court ruled that because the State, as the party with the burden of proof, "offered no proof regarding whether the drug detection canine c[ould] distinguish between hemp and marijuana," the canine's reliability was not established. Because the evidence does not preponderate otherwise, we likewise accept the trial court's factual finding that the canine in this case could not distinguish between illegal marijuana and legal hemp. *See id.* However, we are not bound by the trial court's legal conclusion that based on the canine's inability to distinguish between hemp and marijuana, the canine was unreliable for purposes of establishing probable cause. Whether law enforcement possessed probable cause to search a vehicle pursuant to the automobile exception "is a mixed question of law and fact that we review de novo." *Bell*, 429 S.W.3d at 529.

## IV. ANALYSIS

Both the United States Constitution and the Tennessee Constitution protect against unreasonable searches and seizures. The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause . . . ." Article I, section 7 of the Tennessee Constitution similarly guarantees "[t]hat the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures." Under both constitutions, "a search without a warrant is presumptively unreasonable, and any evidence obtained pursuant to such a search is subject to suppression unless the state demonstrates that the search was conducted under one of the narrowly defined exceptions to the warrant requirement." *State v. Cox*, 171 S.W.3d 174, 179 (Tenn. 2005) (citing *State v. Garcia*, 123 S.W.3d 335, 343 (Tenn. 2003)).

Relevant to the facts of this case, "[t]he 'automobile exception' to the warrant requirement permits an officer to search an automobile if the officer has probable cause to believe that the automobile contains contraband."[5] *State v. Saine*, 297 S.W.3d 199, 207

---

[5] Defendant suggests in his brief that Article I, section 7 of the Tennessee Constitution provides greater protection than the Fourth Amendment to the United States Constitution. However, Defendant did not develop this argument as it relates to the legal issue of this case aside from stating that "there are clear linguistic differences between the two provision[s] and state protections can exceed federal." Having failed

(Tenn. 2009) (citing *Carroll v. United States*, 267 U.S. 132, 149 (1925)). The United States Supreme Court has provided two primary justifications for the automobile exception: (1) vehicles are "readily mobile by the turn of an ignition key" and (2) there is a reduced expectation of privacy involving automobiles. *California v. Carney*, 471 U.S. 386, 393 (1985). Therefore, "[i]f the officer has probable cause to believe that the automobile contains contraband, the officer may either seize the automobile and then obtain a warrant or search the automobile immediately." *Saine*, 297 S.W.3d at 207 (citing *Chambers v. Maroney*, 399 U.S. 42, 52 (1970)).

Defendant argues that "because a canine sniff cannot differentiate between the odor of illegal marijuana and legal levels of cannabis or CBD," probable cause to search a vehicle cannot be "based solely on the dog's sniff . . . because any alert the dog makes is unreliable since the dog can alert on a legal substance."[6] Based on this argument, Defendant urges this Court to overturn *State v. England*, 19 S.W.3d 762 (Tenn. 2000), a prior case involving law enforcement utilizing a canine sweep as part of a probable cause determination.

The State, on the other hand, argues that a "positive alert from a certified drug-detection dog still establishes probable cause to search a car, despite the legal status of hemp." In support of this argument, the State cites to *England* as a "longstanding source" for probable cause involving a positive alert from a trained and reliable drug-sniffing canine. Alternatively, the State argues that "even if this Court were to conclude that a dog's alert *alone* no longer provides probable cause," the alert establishes probable cause when viewed as part of a totality-of-the-circumstances inquiry.

To begin our analysis, we first address the holding of *State v. England*. In *England*, a deputy sheriff initiated a traffic stop after witnessing the defendant driving without a light to illuminate his rear license plate, in violation of Tenn. Code Ann. § 55-9-404 (1998). *England*, 19 S.W.3d at 764. As the deputy awaited the report from dispatch on any outstanding warrants and the status of the defendant's license, the defendant exited his

to develop this argument, Defendant has waived it. We, therefore, proceed on the assumption that the United States and Tennessee constitutions are co-extensive for purposes of resolving this case.

[6] In addition to the question of whether law enforcement possessed probable cause to search the vehicle, Defendant's brief also raises other issues. The most notable additional issue that Defendant raises is whether a dog sniff now constitutes a search in light of the legalization of hemp. *See generally State v. Major*, No. 2021-01469-CCA-R3-CD, 2023 WL 7166314, at *6 (Tenn. Ct. App. Oct. 31, 2023) (McMullen, P.J., concurring) ("I write separately, however, to highlight how the legalization of hemp has fractured the foundation underlying the rule that a drug detection dog sniff is not a search subject to Fourth Amendment protections."). However, that question was not raised in the courts below and is not properly before us. Defendant's brief also appears to suggest that the canine's qualities and training were insufficient and that law enforcement did not have a sufficient basis to make the initial traffic stop. We agree with the State that those issues were not raised in the courts below and are consequently waived. *See* Tenn. R. App. P. 36(a).

vehicle. *Id.* The defendant expressed his concern to the deputy that perhaps the wiring connecting the light was loose. *Id.* at 764–65. The deputy then became suspicious based on their conversation. *Id.* at 765. In particular, during their discussion about the defendant's prior arrest for marijuana possession, the defendant became visibly nervous when the deputy inquired if he had any marijuana in his vehicle. *Id.* The deputy asked for consent to search the vehicle, which the defendant refused. *Id.* Around that time, another deputy arrived on the scene and retrieved his canine from the patrol car to conduct a sweep of the exterior of the defendant's vehicle. *Id.* During the canine sweep, the dog alerted to the vehicle. *Id.* Deputies discovered marijuana, weighing scales, empty plastic bags, and a marijuana pipe. *Id.* The defendant filed a motion to suppress arguing that the sweep constituted a search and that the deputy lacked probable cause to search. *Id.* This Court ultimately held that the canine sweep did not constitute a search and that police possessed probable cause to search the defendant's vehicle.[7] *Id.* at 767, 769.

Based on the briefs of the parties and the responses at oral argument, there appears to be confusion as to whether *England* established a per se rule of probable cause based on a positive alert from a trained and reliable drug-sniffing canine.[8] We now clarify that *England* did not establish a per se rule of probable cause based on a positive alert from a drug-sniffing dog. Rather, the case based its overall probable cause determination on the totality of circumstances: "*Coupled* with the deputy's testimony with regard to the defendant's demeanor, the canine's positive alert provided probable cause." *Id.* at 769 (emphasis added). Although the *England* Court did not expressly state that it engaged in a totality-of-the-circumstances analysis, the Court did explicitly reject adopting a per se rule "of probable cause based on a positive alert by a trained narcotics detection dog." *Id.* at 768. The Court explained that "the finding of probable cause should turn on the reliability of the canine." *Id.*

To the extent any prior opinions of the Court of Criminal Appeals or this Court imply or provide a per se rule of probable cause based on a positive alert in this context, they are overruled. Both this Court and the United States Supreme Court have held that determining whether probable cause exists is a totality-of-the-circumstances inquiry. For example, in *Illinois v. Gates*, the United States Supreme Court stated that the "totality-of-

---

[7] As noted above, the issue of whether a dog sniff is a search is not before us today. Therefore, our discussion of *England* only extends to the second issue in that case: whether police possessed probable cause based, in part, on the positive alert of a drug-sniffing canine. *See England*, 19 S.W.3d at 768–69.

[8] At oral argument the State noted that "*England* did not adopt a per se rule about a dog alert." However, in its brief, the State argues: "A positive alert from a certified drug-detection dog still establishes probable cause to search a car, despite the legal status of hemp. And regardless, the totality of the circumstances established probable cause to search the defendant's car and backpack." This appears to be an argument in favor of a per se rule by including the alternative argument involving the totality of the circumstances.

the-circumstances approach is far more consistent with our prior treatment of probable cause than is any rigid demand that specific 'tests' be satisfied." 462 U.S. 213, 230–31 (1983) (footnote omitted). Consequently, the Court overruled the strict *Aguilar/Spinelli* requirements for determining whether an informant's tip establishes probable cause and instead adopted a totality-of-the-circumstances approach. *Id.* at 238. Likewise, in 2017, this Court abandoned the *Aguilar/Spinelli* test under the Tennessee Constitution in favor of a totality-of-the-circumstances approach. *State v. Tuttle*, 515 S.W.3d 282, 305 (Tenn. 2017). In the context of canine sniffs, the United States Supreme Court has also stated that "[i]n evaluating whether the State has met th[e] practical and common-sensical standard [of probable cause], we have consistently looked to the totality of the circumstances." *Florida v. Harris*, 568 U.S. 237, 244 (2013) (citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003); *Gates*, 462 U.S. at 232; *Brinegar v. United States*, 338 U.S. 160, 176 (1949)). As with the probable cause inquiries in those cases, we proceed in this case by analyzing the totality of the circumstances to determine if law enforcement possessed probable cause to conduct a search.

Probable cause involves non-technical probabilities relating to "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar*, 338 U.S. at 175. "A police officer has probable cause to conduct a search when the facts available to him would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present." *E.g.*, *Harris*, 568 U.S. 237 at 243 (cleaned up) (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983) (plurality opinion)). Naturally, "[d]eterminations of probable cause are extremely fact-dependent." *Bell*, 429 S.W.3d at 534. "Each case must stand on its own facts." *State v. Reynolds*, 504 S.W.3d 283, 301 (Tenn. 2016) (quoting *Dittberner v. State*, 291 S.W. 839, 840 (Tenn. 1927)). As the United States Supreme Court concisely explained in *Florida v. Harris*, a case involving drug-sniffing canines:

> The question—similar to every inquiry into probable cause—is whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime. A sniff is up to snuff when it meets that test.

568 U.S. at 248.

After consideration, we hold that a positive alert from a drug-sniffing canine may continue to be considered in a totality-of-the-circumstances analysis and may continue to contribute to a probable cause determination. This is because probable cause does not require "absolute certainty." *Reynolds*, 504 S.W.3d at 300. While it is true that the legalization of hemp "may add a level of ambiguity to a [dog sniff's] probative value in a probable cause determination, . . . it does not destroy the fact's usefulness outright and

require it to be disregarded." *Colorado v. Zuniga*, 372 P.3d 1052, 1058 (Colo. 2016), *abrogated on other grounds by Colorado v. McKnight*, 446 P.3d 397, 400 (Colo. 2019).[9] A positive alert from a canine trained to detect cannabis, methamphetamine, cocaine, and heroin "still give[s] rise to a high probability that a controlled substance is in the car." *United States v. Deluca*, No. 20-8075, 2022 WL 3451394, at *5 (10th Cir. Aug. 18, 2022).

Even prior to the legalization of hemp, probable cause based on a canine sniff did not demand absolute certainty of contraband being found. *See Harris*, 568 U.S. at 245. In *Harris*, the United States Supreme Court acknowledged that drug-sniffing canines have the potential to alert on a vehicle in circumstances where officers will be unable to locate contraband and will only discover legal possessions. *Id.* ("[I]f the dog alerts to a car in which the officer finds no narcotics, the dog may not have made a mistake at all. The dog may have detected substances that were too well hidden or present in quantities too small for the officer to locate."). In *Harris*, the United States Supreme Court stated that "a well-trained dog's alert establishes a fair probability—all that is required for probable cause— that either drugs or evidence of a drug crime . . . will be found," even when a dog alerts to mere residual *odors* with no substances present *at all*. *Id.* at 246 n.2. Despite these possibilities, the ultimate question is still "whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *Id.* at 248.

Extending the rationale from *Harris* to the facts of this case, the possibility of a dog alerting to hemp rather than an illegal substance "merely affects a fact's weight and persuasiveness [in the probable cause analysis], not its inclusion in the analysis [altogether]." *Zuniga*, 372 P.3d at 1058. This reasoning also likely explains some of the confusion surrounding *England* and related cases. Prior to the legalization of hemp, a positive alert from a drug-sniffing canine trained to detect narcotics suggested the presence of only illegal substances. *See United States v. Place*, 462 U.S. 696, 707 (1983) ("[T]he sniff discloses only the presence or absence of narcotics, a contraband item."). Consequently, the probative value of a dog sniff to indicate the presence of an illegal substance was particularly strong such that it would provide probable cause in the bulk of cases. Although the legalization of hemp has added a degree of ambiguity to a dog's positive alert, a positive alert from a reliable canine trained to detect multiple illegal substances is still probative of whether or not illegal substances are located inside of an automobile and should therefore still be considered in a totality-of-the-circumstances analysis.

---

[9] The Colorado Supreme Court later reclassified dog sniffs as searches under the Colorado Constitution in *Colorado v. McKnight*, 446 P.3d at 400. Our citation to *Colorado v. Zuniga*, 372 P.3d at 1058 does not provide any implicit stance on the distinct legal question of whether a dog sniff is a search.

Having determined that a canine's alert may continue to be a factor to consider under the totality of the circumstances, we now determine whether Officer Trescott possessed probable cause to search the vehicle based on facts of this case. Upon approaching the vehicle, Officer Trescott smelled "a strong odor of a fragrance coming from the vehicle." The record does not indicate what the odor resembled to Officer Trescott, but Mr. Chavez informed Officer Trescott that the smell stemmed from three fragrance pine trees hanging from the mirror. Officer Trescott also observed a backpack in between Defendant's feet. When asked about the backpack, both Mr. Chavez and Defendant stated that the bag did not belong to them. During the interaction, Officer Trescott ordered Mr. Chavez and Defendant to exit the vehicle.[10] After they exited the vehicle, Officer Trescott deployed a drug-sniffing canine to conduct an open-air sniff of the vehicle. The canine was trained to detect cannabis, heroin, methamphetamine, and cocaine. The dog indicated on the vehicle. After the alert, Officer Trescott asked each occupant if there was anything in the vehicle. Both occupants replied no. When Officer Trescott informed Mr. Chavez that he could be charged with anything in the vehicle, Mr. Chavez immediately looked at Defendant and prodded him to talk. Defendant then informed Officer Trescott that he had picked up the backpack from his brother but did not know what was inside. Officer Trescott searched the backpack, discovering the contraband and evidence of crimes that Defendant seeks to suppress.

Based on the totality of the circumstances, we hold that all of "the facts available to [Officer Trescott] would warrant a person of reasonable caution in the belief that contraband or evidence of a crime [was] present." *Harris*, 568 U.S. at 243 (cleaned up) (quoting *Brown*, 460 U.S. at 742). In addition to the positive indication from the drug-sniffing canine capable of detecting multiple illegal substances, Mr. Chavez and Defendant both provided suspicious answers to Officer Trescott's questions regarding the bag resting between Defendant's feet. "Response[s] to questioning by police officers [are] a common source of probable cause determinations." *State v. Shrum*, 643 S.W.2d 891, 894 (Tenn. 1982), *abrogated on other grounds by Tuttle*, 515 S.W.3d at 305; *see also Columbia v. Wesby*, 583 U.S. 48, 61 (2018) ("[P]robable cause does not require the officers to rule out a suspect's innocent explanation for suspicious facts."). Each of the only occupants of the vehicle denied owning the backpack. Because it is very unlikely that neither occupant owned the backpack, these responses strongly support the probable cause determination. Moreover, not only did Mr. Chavez prod Defendant to talk to law enforcement about the contents of the backpack, he prodded him to talk *after* being informed that Mr. Chavez himself could face consequences for anything illegal found within the vehicle. Furthermore, Mr. Chavez's prodding Defendant to talk to police indicated that Mr. Chavez

---

[10] At oral argument, Defendant seemed to base part of his argument on the fact that Officer Trescott required the occupants to exit the vehicle. However, it is well-established that police may order occupants to exit the vehicle during a valid traffic stop even without a suspicion of criminal activity in the interest of officer safety. *See Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977); *Maryland v. Wilson*, 519 U.S. 408, 410 (1997); *see also State v. Berrios*, 235 S.W.3d 99, 106 (Tenn. 2007).

was aware of something inside the vehicle. Lastly, while Officer Trescott smelling an unspecified "strong odor" would not be sufficient to establish probable cause alone, it is another notable fact when considering the totality of the circumstances.

In summary, sufficient facts existed for Officer Trescott to conclude that contraband or evidence of a crime was present inside the vehicle. We hold that Officer Trescott possessed probable cause to satisfy the automobile exception to the warrant requirement. Therefore, like the Court of Criminal Appeals, we conclude the trial court erred by granting Defendant's motion to suppress.

## V. CONCLUSION

We hold that a positive indication from a drug-sniffing canine may continue to contribute to a finding of probable cause when examining the totality of the circumstances, notwithstanding the legalization of hemp. After examining the totality of the circumstances in this case, we conclude that law enforcement possessed probable cause to search the vehicle pursuant to the automobile exception of the warrant requirement. Accordingly, we affirm the judgment of the Court of Criminal Appeals reinstating the indictments against the defendant and remanding for further proceedings. It appearing that Defendant, Andre JuJuan Lee Green, is indigent, costs of this appeal are taxed to the State of Tennessee.

_____
ROGER A. PAGE, JUSTICE